**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ——————————————— x | |
| : | **Civil Action No. 0:20-cv-60027-UU** |
| HOWARD NEWMAN, on behalf of himself : and others similarly situated, | |
| : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| EDOARDO MELONI, P.A. d/b/a THE : MELONI LAW FIRM, | |
| : | |
| : | |
| Defendant. : | |
| ——————————————— x | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

## Introduction

This case centers on the alleged failure of Edoardo Meloni, P.A. d/b/a The Meloni Law Firm ("Defendant") to comply with certain provisions of the Fair Debt Collection Practices Act ("FDCPA") when sending initial debt collection letters to Florida consumers. Specifically, Dr. Howard Newman ("Plaintiff") alleged that the initial debt collection letters did not comply with sections 1692g(b) and 1692e of the FDCPA. For its part, Defendant denies any liability or that its practices violated the FDCPA.

However, after several months of litigation, including briefing on Plaintiff's motion for class certification, the parties reached an agreement to resolve this case whereby Defendant will create a non-reversionary class settlement fund in the amount of $5,000 to cover payments to all class members. As a result, each participating class member will receive over $238—a remarkably high per-person recovery considering the cap on class-wide damages under the FDCPA. The settlement fund here greatly exceeds that cap of 1% of Defendant's net worth, and thus is more than class members could have recovered in statutory damages at trial. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 of 1% of the net worth of the debt collector).

Defendant will separately pay an individual damages award to Plaintiff, representing the most he could have recovered under the statute. Defendant also will pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees and expenses in an amount to be determined by the Court at the end of this litigation. Additionally, Defendant will pay all costs of class notice and settlement administration. And finally, Defendant agrees to cease using the form of debt collection letter that precipitated this litigation.

Plaintiff now seeks certification of the settlement class and preliminary approval of the

settlement. Plaintiff and his counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the settlement. Importantly, Defendant does not oppose this relief.

**Summary of the Settlement**

**I.      The settlement provides substantial monetary compensation for each class member, and Defendant will retire the form of debt collection letter at issue.**

The Settlement Agreement[1] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of all persons (a) with a Florida address, (b) to whom Defendant mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a debt incurred primarily for personal, family, or household purposes, (d) between January 6, 2019 and January 6, 2020, (e) which demanded payment on the subject debt within 30 days of the date the communication was mailed to that person. Defendant has identified 21 potential members of the Class, including Plaintiff.

Class members who do not exclude themselves from the settlement will receive a pro-rata share of the settlement fund. Thus, if none of the class members exclude themselves, each class member will receive approximately $238.09. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be redistributed to the Legal Aid Society of Palm Beach County, Inc.— the *cy pres* recipient selected by the parties.

In addition, Defendant agrees to cease using the form debt collection letter at issue. Importantly, Plaintiff might not have obtained this relief had this case gone to trial. *See Midland*

---

[1]      A true and correct copy of the parties' Settlement Agreement is attached as Exhibit 1 to the Declaration of Jesse S. Johnson, which is submitted herewith as Exhibit A.

*Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").[2]

Finally, in addition to the foregoing, and separate and apart from the settlement fund, Defendant will pay $1,000 to Plaintiff as "additional damages" pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), as well as the costs of class notice and administration, plus an award of reasonable attorneys' fees and expenses to Plaintiff's counsel, subject to the Court's approval.

## II.    The parties will provide direct mail notice to all Class members.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each member of the Class. To that end, the parties have selected First Class, Inc. to act as the settlement administrator. First Class is an experienced settlement administrator that has previously received approval to administer similar class action settlements, including in this district. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 3940256, at *3 (S.D. Fla. Aug. 19, 2019) (Middlebrooks, J.); *Dickens v. GC Servs. Ltd. P'ship,* No. 16-803, 2019 WL 311335, at * 2 (M.D. Fla. Jan. 24, 2019). Class members wishing to receive a settlement check will not need to take any action. Unless a class member excludes himself or herself from the settlement, he or she will receive approximately $238.09 upon final approval of the settlement.

### This Court Should Preliminarily Certify the Settlement Class

## I.    The FDCPA is well-suited for class action treatment.

Plaintiff previously submitted a motion for class certification and appointment of class counsel, which the Court denied as moot in light of the parties' settlement. ECF No. 22. Plaintiff will review those arguments here in connection with the proposed settlement class. Class treatment of FDCPA claims is particularly appropriate because the statute imposes strict liability and is

---

[2]    Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

liberally construed in favor of consumers. *Hepson v. J.C. Christensen & Assocs., Inc.*, No. 07-1935, 2008 WL 4833097, at \*4 (M.D. Fla. Nov. 5, 2008). Courts in this circuit use the objective "least-sophisticated consumer" standard to evaluate whether debt collection communications violate the FDCPA, rendering moot any particular class member's understanding of a disputed letter. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). At bottom, "[r]epresentative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).

## II.    Plaintiff and the Class satisfy the requirements of Rules 23(a) and 23(b)(3).

Here, to attain certification of the proposed Class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). And because Plaintiff seeks certification under Rule 23(b)(3), he also must demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (Dimitrouleas, J.) (certifying FDCPA class).[3]

### A.    The class is so numerous and geographically dispersed that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether

---

[3]    Because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied here. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). The Eleventh Circuit held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendant mailed a total of 30 letters to 21 persons in Florida between January 6, 2019 and January 6, 2020, each letter containing materially similar language to the one sent to Plaintiff, which he contends violates the FDCPA. Some of these individuals have since relocated, so potential class members currently reside in three states: Florida, Georgia, and New Jersey. *See* ECF No. 18-3 at ¶¶ 6-7. The size of the Class, coupled with members' geographic dispersion, supports certification. *See, e.g.*, *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (no abuse of discretion in finding numerosity met for class of 31); *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 694 (S.D. Fla. 2013) (Altonaga, J.) (preliminary showing of at least 48 sufficient to meet numerosity); *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (collecting cases certifying classes of 7, 14, 16, 17, 18, 21, and 35); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 670 (S.D. Fla. 1997) (Gold, J.) ("[T]he wide geographic dispersion of the class members both nationwide in Count I, and throughout Florida in Counts II and III, supports a finding of impracticability of joinder.").[4]

Importantly, because this is a Rule 23(b)(3) class action, Class members have the right to opt out and pursue their own claims. *See* Rule 23(c)(2)(B); *Jancik v. Cavalry Portfolio Servs., LLC*, No. 06-3104, 2007 WL 1994026, at *11 (D. Minn. July 3, 2007) ("Moreover, individual plaintiffs will have the option to opt out of the class action and pursue statutory damages on their own if they so choose."). Thus, there is no risk of unnecessarily depriving Class members of their

---

[4]    Moreover, there is no difficulty in identifying potential Class members, as Defendant already has provided Plaintiff with their names and addresses. *See* ECF No. 18-3.

right to adjudicate their own claims. And to that end, certification of the settlement Class and dissemination of class notice will serve to inform and educate Class members of legal rights to which they are likely oblivious, and which they were unlikely to pursue on their own. *See Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) ("Not only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually.").

**B.      The claims present questions of law and fact common to the Class.**

Rule 23(a) also requires at least one issue common to all members of the Class. *Drossin*, 225 F.R.D. at 615. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (Moreno, J.).

The claims asserted by Plaintiff and the Class originate from the same conduct, practice, and procedure on the part of Defendant—namely, the issuance of a standardized initial debt collection letter. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts, and answers to common questions—e.g., whether Defendant is a debt collector under the statute, and whether its demand for payment within the statutory validation period violates the law—will fully resolve this litigation. Commonality is readily met here. *See, e.g.*, *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 334 F.R.D. 326, 331 (S.D. Fla. 2020) ("Here, there is a common question of law shared by the entire class – whether the Template received by all class members violates the FDCPA. Thus, Plaintiff has established commonality."); *Alderman v. GC Servs. Ltd. P'ship*, No. 16-14508, 2018 WL 542455, at *4 (S.D. Fla. Jan. 18, 2018) (Rosenberg, J.) (same).

Indeed, claims brought as a result of a form debt collection letter are routinely certified as

class actions. *See, e.g.*, *Sullivan*, 2019 WL 6709575; *Dickens*, 2019 WL 2280456; *Klewinowski v. MFP, Inc.*, No. 13-1204, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Servs., Inc.*, No. 09-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008). Plaintiff's claims here on behalf of the Class here are no different and thus should be certified.

**C.    Plaintiff's claims are typical of those of the Class members.**

Next, typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations.").

Here, Plaintiff and the members of the Class allegedly suffered by way of a common practice employed by Defendant in that they each received the same standardized initial debt collection letter that provided contradictory payment deadlines and demanded payment within thirty days while threatening a lien if such payment was not made. *See, e.g.*, *Holzman*, 2020 WL 408243, at *2 ("Plaintiff and all of the proposed class members received the Template and seek the same relief based on the same legal theory."). Thus, Plaintiff possesses the same interests and

7

has suffered the same injuries as each member of the Class and asserts identical claims and seeks identical relief on behalf of the members of the Class.

To be sure, there is no doubt that Plaintiff is a member of the Class and that his claims are typical of those of the other members of the Class. *See* ECF No. 1-1 (demonstrating that Defendant sent Plaintiff the violative letter at issue during the class period). As a result, Plaintiff's claims are typical of those of the Class he seeks to represent.

> ### D.     Plaintiff and his counsel will fairly and adequately protect the interests of Class members.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action).

Here, Plaintiff's claims are aligned with the claims of members of the Class. He has been committed to vigorously pursuing the members' claims with their best interests in mind, including having moved for class certification shortly before settlement was reached. *See* ECF No. 18. Here, Plaintiff diligently pursued this case with the goals of (1) obtaining relief for the members of the class, and (2) forcing Defendant to change its collection practices moving forward. *See* ECF No. 18-1 at ¶¶ 11-12. By way of this settlement, Plaintiff has done exactly that. Plus, he has retained the services of counsel—Greenwald Davidson Radbil PLLC—who are experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent Class members. *See* Ex. A at ¶ 7 (collecting cases). As a result, Plaintiff satisfies Rule 23(a)(4).

> ### E.     Plaintiff's counsel should be appointed Class Counsel.

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following

factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class." Proposed Class Counsel Greenwald Davidson Radbil PLLC will continue to prosecute this action, as they have done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), Greenwald Davidson Radbil PLLC also satisfy the considerations of Rule 23(g) and should be appointed as Class Counsel. *See, e.g.*, *Sullivan*, 2019 WL 3940256, at *3 (appointing Greenwald Davidson Radbil PLLC as Class Counsel); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (same); *Rodriguez v. Dynamic Recovery Solutions, LLC*, Nos. 14-20933, 14-24502, 2015 WL 178161, at *1 (S.D. Fla. Jan. 14, 2015) (Bloom, J.) (same).

> **F.  Common questions of law and fact predominate over any individualized inquiries.**

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages; where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, common issues necessarily predominate because Plaintiff's claim is based on standardized conduct by Defendant through its use of form initial debt collection letters. More specifically, the central legal issue before this Court is whether Defendant violated the FDCPA by sending initial debt collection letters that demanded payment within 30 days of the date of the letter, in violation of consumers' validation rights. For this reason, courts routinely find that claims based on form debt collection letters and standardized conduct satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Riley v. Home Retention Servs., Inc.*, No. 14-20106, 2015 WL 11216333, at *2 (S.D. Fla. Mar. 17, 2015) (Ungaro, J.) ("[q]uestions of law and fact common to all members of the Settlement Class predominate over any questions affecting only individual members for settlement purposes" in settlement of alleged violations of § 1692e of the FDCPA); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) (Scola, J.) ("As to the FDCPA class, the Court finds that common issues predominate.").

As the Northern District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5. For these same reasons, Rule 23(b)(3) predominance is satisfied.

> **G.    A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and Class members' claims.**

Finally, when evaluating the superiority requirement of Rule 23(b)(3), the Court must

consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit recently explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Because the claims in this case all arise from form debt collection letters, a class action is the superior vehicle for determining the rights of absent class members. In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA[.]

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013).

Likewise, a class action here is the superior method to adjudicate Plaintiff's and the Class's

claims. *See Riley*, 2015 WL 11216333, at *2 ("A class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this controversy"); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.").

### This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).

Plaintiff next will address the fairness and reasonableness of the settlement itself. Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and class notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal

fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture; nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) itself also requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other.

Here, Plaintiff is confident that each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable, and should receive approval. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Dorado v. Bank of Am., N.A.*, No. 16-21147, 2017 WL 5241042, at *3 (S.D. Fla. Mar. 24, 2017) (Ungaro, J.) (settlement approval factors are examined "in light of 'the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'"); *Turner v. Gen. Elec. Co.*, No. 05-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

## I.     There was no fraud or collusion behind the parties' settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there

is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010). Here, the parties litigated this case for several months and only reached a resolution after Plaintiff filed his motion for class certification. Counsel for the parties zealously negotiated on behalf of their clients, which includes the exchange of several written settlement proposals and numerous telephone conferences through counsel. The settlement thus is not a product of collusion but rather was the result of arm's-length settlement negotiations spearheaded by counsel experienced in this area of the law. Ex. A at ¶¶ 7-12. The first factor correspondingly favors approval here. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

## II.    The complexity, expense, and duration of the litigation favors preliminary approval.

Worth noting, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different. The parties settled while Plaintiff's motion for class certification remained pending, on the eve of Defendant's anticipated response in opposition. If the litigation had moved forward, Plaintiff would have had to obtain class certification over Defendant's objection, and then prevail at summary judgment, or possibly at trial—and on a likely appeal—to obtain any benefits for members of the Class. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and

amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

And because damages under the FDCPA are not mandatory, as explained further below, there is no guarantee that Plaintiff would have recovered any money for the Class even assuming a trial victory. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). Given these risks, as compared to the excellent results obtained for the Class, preliminary approval is appropriate to avoid the uncertainties of trial. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### III.    The parties have sufficiently developed the factual record through discovery to enable Plaintiff and his counsel to make a reasoned settlement judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that the parties had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties engaged in written discovery and had extensive discussions about the merits of the claims and the propriety of class certification, culminating in Plaintiff's filing of his motion for class certification. *See* ECF No. 18. As part of fact discovery, Defendant provided Plaintiff with information concerning the number and identities of potential Class members, as

well as Defendant's net worth—the sole determinant of the Class's potential statutory damages award here. *See* 15 U.S.C. § 1692k(a)(2)(B). Also, Plaintiff's counsel is well-versed in FDCPA class litigation, having litigated numerous such actions nationwide. *See* Ex. A at ¶ 7. The settlement was therefore consummated with a firm understanding of the parties' respective positions and the maximum potential recovery for the Class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

**IV.    The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.**

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. at 314. In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig*., 830 F. Supp. 2d at 1350.

No matter, the settlement fund here amounts to *more* than the best theoretical statutory damages recovery for the Class, as $5,000 well exceeds 1% of Defendant's balance sheet net worth. *See* 15 U.S.C. § 1682k(A)(2)(B); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. The law provides for statutory damages awards *up to* certain amounts after balancing specified factors like the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which

Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

Accordingly, even had Plaintiff and the Class prevailed at trial, the jury may have awarded little in the way of statutory damages, or potentially none at all. And this risk of a minimal damages award in an FDCPA class action was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Given the foregoing, the immediate relief provided by the settlement is substantial, and a recovery of more than $238 per person represents a phenomenal result for Class members. In fact, Class members here stand to receive individual recoveries many multiples higher than those obtained in other FDCPA class settlements approved throughout the country. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) (Middlebrooks, J.) ($27.51 per class member); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-00142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH),

2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member). And this settlement provides a significantly greater per-person recovery than other FDCPA class settlements approved by this Court. *See, e.g.*, *Riley*, 2015 WL 11216333, at *3 ($100 per class member).

What's more, Plaintiff also secured Defendant's confirmation that it has ceased using the form of debt collection letter at issue—an achievement that was not necessarily available at trial, *see, e.g.*, *Midland Funding LLC*, 644 F. Supp. 2d at 977, and which will benefit many consumers in the future who become the subject of Defendant's collection efforts. In sum, considering the benefits obtained here in comparison to those likely at trial and those obtained in other similar actions, this factor strongly supports preliminary approval of the settlement.

## V.     The opinions of Plaintiff and his counsel also support preliminary approval.

Both Plaintiff and his counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. A strong initial presumption of fairness attaches to the proposed settlement because it was reached by well-qualified and experienced counsel engaged in arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *accord* Ex. A at ¶¶ 7-12 (demonstrating proposed Class Counsel's extensive experience). As a result, Plaintiff's and his counsel's strong support for this settlement militates toward this Court's approval of the same.

## VI.    The settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note guides that courts should consider "whether

the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. And as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**This Court should approve the proposed notice to class members.**

Under Rule 23(e), this Court also must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means.

Here, the parties agree to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the Class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement,

19

including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of his attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice").

**This Court should schedule a final fairness hearing.**

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard as well. The Court then will determine after the hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 90 to 120 days after the Court's preliminary approval of the settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement. As noted, Defendant does not oppose the relief requested herein.

DATED:  June 4, 2020           Respectfully submitted,


*/s/ Jesse S. Johnson*
James L. Davidson
Florida Bar No. 723371
Jesse S. Johnson
Florida Bar No. 0069154
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2020, I filed a copy of the foregoing with the Court using

the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Jesse S. Johnson*
Jesse S. Johnson